UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| TERESA LOUISE MCCOY,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 2:16-cv-00438-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Teresa L. McCoy's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claims for disability insurance benefits and supplemental security income.[2] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

I. **ADMINISTRATIVE PROCEEDINGS**

On July 11, 2012, Teresa L. McCoy ("Petitioner") protectively applied for Title II disability and disability insurance benefits and for Title XVI supplemental security income. (AR 10.) Petitioner alleged disability beginning March 14, 2012 in both applications. (*Id.*) Her claims

---

[1] The pleading was titled and framed as a complaint, but is properly identified as a petition for review, as it seeks review of a final agency action. It will be referred to herein as a petition for review.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

were denied initially on October 22, 2012 and then again on reconsideration on January 11, 2013. (*Id.*) On January 23, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at an initial hearing held on September 11, 2014 in Spokane, Washington. (*Id.*) Based in part on the testimony of impartial medical expert Dr. Anthony Francis, M.D., Petitioner was sent for a consultative examination. (*Id.*) Petitioner then appeared and testified at a supplemental hearing on March 5, 2015. (*Id.*) Impartial medical expert Dr. Richard A. Hutson, M.D., and impartial vocational expert Kimberly Mullinax also appeared and testified. (*Id.*)

On April 9, 2015, ALJ Caroline Siderius issued a Decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 19.) Petitioner timely requested review from the Appeals Council on April 29, 2015. (AR 6.) On July 26, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner timely filed this action, arguing that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). Petitioner asserts the ALJ erred in finding her impairments did not meet or medically equal the official listing for spine disorders under Listing 1.04A. She further asserts error in a failure to consider her impairments in combination when evaluating whether she meets or medically equals a listed impairment. *See generally* Pet'r's Br. (Dkt. 18). Petitioner seeks reversal, or remand for a supplemental hearing. *Id.*

**MEMORANDUM DECISION AND ORDER – 2**

Respondent moved to dismiss the petition, arguing that it was not timely filed. (Dkt. 11.) After reviewing the briefing and supporting materials (Dkts. 11-1, 11-2, 12-1, 13), this Court denied the motion, holding that Respondent had not shown the petition was untimely. (Dkt. 15.)

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such

**MEMORANDUM DECISION AND ORDER – 3**

cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is

**MEMORANDUM DECISION AND ORDER – 4**

not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since March 14, 2012, the alleged onset date. (AR 12.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "spina bifida occulta defect; degenerative disc disease; and obesity." (AR 12.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner does not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 13–14.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> to lift up to fifteen pounds occasionally and less than ten pounds frequently, to sit up to four hours, and stand/walk up to six hours a day. She will need an option to alternate between sitting and standing. The claimant can never climb ladders, ropes, or scaffolds, and she can never crawl or kneel. She is limited to occasional bending, stooping, and crouching. She can frequently balance. The claimant must avoid concentrated exposure to wetness, humidity, vibration, and extreme temperatures. She is unable to work at unprotected heights and she must avoid uneven surfaces.

(AR 14.) The ALJ further found that Petitioner is unable to perform any of her past relevant work. (AR 17.)

In the fifth and final step, if it is established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, she is not disabled; if the claimant is not

**MEMORANDUM DECISION AND ORDER – 6**

able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner's RFC is compatible with work as an "assembler" or a "telephone information clerk." (AR 18.) The ALJ further found that each of these jobs exists in significant numbers in the national economy. (AR 17–18.)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from March 14, 2012, through the date of this decision." (AR 18.)

**B.     Analysis**

Petitioner argues the ALJ's decision denying benefits is not supported by substantial evidence and is contrary to law and regulation. Pet. for Review 1 (Dkt. 1). She contends the ALJ erred by finding that her back condition did not meet or medically equal listing 1.04A of the official listings. Pet'r's Br. 5–8 (Dkt. 18). She further contends the ALJ erred by failing to adequately explain how she considered the Petitioner's severe conditions in combination. *Id.* at 3–5.

   **1.  Petitioner Has Not Shown She Meets the Requirements of Listing 1.04A.**

Petitioner claims error by the ALJ in the finding that she does not meet the requirements of Listing 1.04A. Pet'r's Br. 5–8 (Dkt. 18). Under SSA regulations, "[t]he Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Listing 1.04 addresses disorders of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04. To satisfy the requirements of Listing 1.04A, Petitioner must

**MEMORANDUM DECISION AND ORDER – 7**

show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

The ALJ found that Petitioner's severe back disorder did not meet listing 1.04A "because the claimant had some positive straight-leg raising tests . . . but she also had negative testing as well." (AR 13.) The ALJ further found "no evidence that the claimant has consistently had decreased motor strength, decreased reflexes, or diminished sensation as required by the listing." (*Id.*) At the supplemental hearing, Petitioner's counsel questioned the testifying medical expert on this topic:

> EXAMINATION OF THE MEDICAL EXPERT BY THE ATTORNEY:
> Q  Doctor, did you get Exhibit 8-F?
> A  Yes, from Olympus Health?
> Q  Yeah. It's a consultative exam ordered by DDS.
> A  Yes.
> Q  Can you tell me why she does not meet 1.04A based on that examination? Did you note that there was a positive straight leg test bilaterally and sensory loss in the thigh?
> A  Yeah, sure.
> Q  So, why --
> A  She had no -- the gait was steady. The 5 over 5 are normal. Sensation was [inaudible], right anterior thigh and positive straight leg racing on both sides. Reflexes were [inaudible]. Joints were up and down getting in and out of spine.
> Q  Okay. I'm having --
> A  Tandem walking, hopping were all okay. She does not meet or equal 1.04A because have [*sic*]³ the appropriate loss of neuro anatomical function that is required.
> Q  And where in l.04A does it have that she -- where you're citing that? I'm looking at it now. It requires degenerative disc disease, correct? And she has that.
> A  Right.
> Q  And she has evidence of nerve root compression, correct?
> A  Yes.
> Q  Okay. And she's got sensory loss at least in the thigh.

---

³ So in original. From context it appears the medical expert means "because she does not have."

**MEMORANDUM DECISION AND ORDER – 8**

> A But one small area in the L4 dermatome.
> Q And she has positive straight leg lifting or leg tests bilaterally.
> A Right.
> Q So, what element of l.04A did she not meet?
> A Well, she's got some sensory change, L4 nerve root. L4 nerve part of the femoral nerve. It [inaudible] muscles, which are --
> ALJ: Wait, wait, hold on a second, Doctor, you're kind of breaking up. If you're on a headset or speaker phone, maybe you could just put it down for a minute to give your explanation.
> ME: Let me pick up the handset, Judge.
> ALJ: Thank you. Thank you.
> ME: You're welcome. The reflexes are two plus and equal. The motor -- I was giving you the motor and sensory, so forth, of the L4 nerve root, which isn't part of the femoral nerve. It enervates the quadriceps muscles, which there's no evidence of any atrophy or weakness in this case. It gives you the knee reflex, which is normal.
> It gives you sensation along the medial side of the thigh and down the medial aspect of the leg. There's slight change in light touch, but certainly that's the neuro anatomical function of the L4 nerve root and that's very specific for those things and they are not present. She's got partial things, but not enough here to meet or equal the listing, in my opinion.

(AR 31–33.)

The medical expert's testimony that there was "no evidence of any atrophy or weakness in this case" is consistent with the ALJ's finding that Listing 1.04A was not met because that listing requires "motor loss (atrophy with associated muscle weakness or muscle weakness)." The ALJ gave this opinion significant weight because it was consistent with the objective findings, with a recent imaging of Petitioner's lumbar spine, and with the medical expert's testimony from the initial hearing. (AR 13.) Petitioner has not challenged the ALJ's reliance on this evidence or the testimony.

Petitioner recites, at some length, record evidence documenting medical findings regarding her back conditions. Pet'r's Br. 6–8 (Dkt. 18). But she does not cite any evidence that she suffers from motor loss sufficient to meet the Listing 1.04A requirements. Indeed, much of the evidence she cites is from a report issued by Dr. Arthur S. Watanabe, who performed the

**MEMORANDUM DECISION AND ORDER – 9**

consultative examination requested by the ALJ during the initial hearing. However, Dr. Watanabe reported normal muscle strength in all tested areas, including hip flexion, hip extension, hip abduction, hip adduction, leg flexion, and leg extension. (AR 334.) Dr. Watanabe further opined that "[m]uscle tone to bulk are normal" and that Petitioner "was able to squat and rise from that position with ease" and "was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table." (*Id.*) Thus, his report gives no indication Petitioner suffered from motor loss, atrophy, or weakness in conjunction with her back condition.[4] Nor has Petitioner offered any other evidence to that effect.

Furthermore, even if Petitioner had shown record evidence of motor loss, such would not be sufficient, by itself, to warrant reversing or remanding the ALJ's decision. Petitioner's burden here is to show that the ALJ did not rely on substantial evidence, and she does not challenge the evidence on which the ALJ relied. In short, Petitioner has not shown the ALJ erred in finding she did not meet Listing 1.04A.

### 2. Petitioner Has Not Shown She Medically Equals the Requirements of Listing 1.04A.

Alternatively, Petitioner argues that if she did not meet the requirements of Listing 104A, she medically equaled them. Pet'r's Br. 8 (Dkt. 18). She contends that "[t]he report of Dr. Watanabe, and specifically the finding of right lower extremity radiculopathy, confirmed by examination, is sufficient to meet the listing, or at minimum medically equal listing 1.04 A." *Id.*

A claimant's "impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R.

---

[4] Moreover, Petitioner's reliance on Dr. Watanabe's report is misplaced to some degree because the ALJ gave Dr. Watanabe's opinion only "some weight," finding instead that the opinion of medical expert Dr. Hutson was "more consistent with the record as a whole." (AR 16.) Petitioner does not challenge the ALJ's assignments of weight to the various medical opinions in the record.

**MEMORANDUM DECISION AND ORDER – 10**

§ 404.1526(a). Where a claimant has a listed impairment but does not exhibit all of the required findings for that impairment, medical equivalence can exist if the claimant has other findings related to her impairment that are at least of equal medical significance to the required criteria. 20 C.F.R. § 404.1526(b)(1). The ALJ must consider medical equivalence based on all evidence in the claimant's case record about her impairments and their effects that are relevant to this finding. 20 C.F.R. § 404.1529(d)(3). This process involves comparing the claimant's symptoms, signs, and laboratory findings with the symptoms, signs, and laboratory findings of a listed impairment. *Id.* Thus, to merit a finding of medical equivalence, Petitioner must offer evidence showing her own symptoms, signs, and laboratory findings are at least as medically significant as those that would show she met the listing requirements.

As described *supra*, Petitioner recites the medical evidence of record documenting her back impairment.[5] Pet'r's Br. 6–8 (Dkt. 18). But she does not cite evidence showing that her impairment is as significant as an impairment that meets all the requirements of Listing 1.04A. Nor does she articulate any reasoning that would support making such a finding based on the evidence that she does cite. In particular, she offers no argument or evidence indicating how her impairment is as significant as the listed impairment despite her lack of any diagnosed motor loss. Accordingly, Petitioner has not shown the ALJ erred in finding that she did not medically equal Listing 1.04A.

3. **Even If the ALJ Erred by Failing to Consider Petitioner's Impairments in Combination, Petitioner Has Not Shown Such Was Reversible Error.**

Petitioner contends the ALJ erred by considering her impairments in isolation and not in combination. She asserts the "ALJ was under a statutory duty to consider all severe conditions in

---

[5] Petitioner combined her arguments that she (1) met or (2) medically equaled Listing 1.04A, but the Court addresses them separately for clarity.

**MEMORANDUM DECISION AND ORDER – 11**

combination, and explain why they did or did not meet or medically equal a listing under the listing of impairments." Pet'r's Br. 3–5 (Dkt. 18). She cites precedent holding that where the claimant provides evidence that the combination of her impairments established medical equivalence, "the ALJ must explain adequately [her] evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). In making this argument, she relies on the ALJ's finding that her obesity is a severe impairment. Pet'r's Br. 4–5 (Dkt. 18); *see also* AR 13–14. She contends the ALJ failed to explain the effects of her obesity. Pet'r's Br. 4 (Dkt. 18).

Respondent argues that Petitioner points to no evidence suggesting her obesity, either alone or in combination with other impairments, caused any limitations. Resp't's Br. 3 (Dkt. 19). Respondent quotes *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), for the proposition that "[e]ven on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." Resp't's Br. 3 (Dkt. 19). In reply, Petitioner reiterates her position that the ALJ had a duty to explain how her conditions in combination do not medically equal a listing. Pet'r's Reply Br. 1 (Dkt. 20). She also distinguishes *Burch* on the basis that obesity was not found to be a severe impairment in that case. *Id.*

It is Petitioner's burden in the first instance to prove that she meets or medically equals a listing. 42 U.S.C. § 423(d)(5)(A). Thus, as an initial matter, the ALJ here was not obligated to "explain adequately her evaluation of … the combined effects of the impairments" unless Petitioner provided evidence of medical equivalence. It is not clear in this case that Petitioner did so. Petitioner does not explain in her briefing either how she is limited by her obesity in combination with her other severe impairments or how she presented such evidence or argument to the ALJ. Reviewing the record, the only evidence the Court identified regarding the limiting

**MEMORANDUM DECISION AND ORDER – 12**

effects of Petitioner's obesity appear in the report by Dr. J. Craig Stevens, M.D., who conducted a disability determination examination. Dr. Stevens noted Petitioner's spina bifida occulta defect and mild disk space narrowing, but opined that he would "summarize these features as being only mildly abnormal." (AR 319, 320.) He documented Petitioner's estimation of 40 pounds of weight gain in the prior 12 months, followed by 20 pounds of weight loss for a net gain of 20 pounds. (AR 320.) On the final page of Dr. Stevens's report, he opined:

> Ms. McCoy describes chronic low back pain. It appears unlikely that this relates to the spina bifida occulta or her minor lumbar disk space narrowing. The disk space narrowing likely took years to occur and the spina bifida occulta has been present all her life. Rather her 40 lbs of weight gain appears to be a more likely culprit associated with the onset of her back pain.

(AR 320.) Dr. Stevens ultimately concluded that Petitioner "has intact ability to perform work-related physical activities that involve sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." (*Id.*) The ALJ gave Dr. Stevens's opinion little weight, "as Dr. Stevens failed to account for the claimant's degenerative disc disease and spina bifida, as well as her obesity, which are documented with objective evidence." (AR 16.) Thus, the only record evidence the Court has identified to support Petitioner's contention her obesity contributed to her limitations[6] was rejected by the ALJ. Petitioner does not challenge the ALJ's assignment of weight to Dr. Stevens's opinion, so the ALJ's evaluation stands.

Assuming for the sake of argument that Petitioner did offer evidence of medical equivalence, the Court is not persuaded that the ALJ's analysis fell short of the requirement outlined in *Marcia*. The ALJ stated that Petitioner "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments." (AR

---

[6] There may be other such evidence in the record, and the Court has attempted to review the record in this case thoroughly. Ultimately, however, it is party's responsibility to identify the relevant evidence in the record.

**MEMORANDUM DECISION AND ORDER – 13**

13 (emphasis added).) Thus, there is some evidence the ALJ did consider Petitioner's impairments in combination, and a reference to having done so and a dispute about the conclusion drawn is not unusual in an appeal from an ALJ decision. But, the requirement to consider the severity of a claimant's impairments in combination has been the law since at least 1980. 45 F.R. 55566–67 (Aug. 21, 1980) ("In §§ 404. 1522 and 416.922 we explain that, when a person has two or more impairments, we will evaluate them together to see if they are severe enough to keep the person from doing substantial gainful activity.") Even if one could contend that the statement in the ALJ's decision is in the nature of boilerplate, it is a representation by the ALJ as to what was considered. Hence, the statement will be credited unless Petitioner offers persuasive evidence that the ALJ did *not* consider her impairments in combination.

Here, the ALJ's treatment of the issue is brief, contained in two paragraphs. The first paragraph states that Petitioner's "severe back disorder does not meet or medically equal listing 1.04A." (AR 13.) Nothing in that paragraph suggests the ALJ considered the back disorder in combination with Petitioner's other severe impairment, obesity. However, the second paragraph focuses on Petitioner's obesity. Therein, the ALJ stated that obesity is "a medically determinable impairment and adjudicators must consider its effects when evaluating the claimant's limitations at all steps of the sequential evaluation." (AR 14.) The ALJ cited SSR 02-1p in support of this proposition. (*Id.*) SSR 02-1p, entitled "Evaluation of Obesity," provides in part that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." 2002 WL 34686281 at *1. It further expressly requires adjudicators to consider obesity in determining whether an individual's impairments meet or equal the requirements of a listed impairment. *Id.* at *3. Finally, it provides that

> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing,

**MEMORANDUM DECISION AND ORDER – 14**

> but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.
>
> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

*Id.* at \*5–\*6. Thus, SSR 02-1p extensively addresses how obesity is to be considered when evaluating whether a claimant's combination of impairments meets or medically equals the severity of a listing. The ALJ's citation to the SSR demonstrates an awareness of such a requirement, undermining Petitioner's contention that the ALJ failed to undertake such an analysis. Ultimately, the ALJ found that Petitioner "reported that she is able to function quite well in that she is independent in self-care, she is able to do household chores, she is able to drive a car, and she is able to go shopping." (AR 14.) The ALJ cited the function report Petitioner herself completed in support of these findings. (AR 14; AR 286.)

The Court is not persuaded the ALJ failed to consider Petitioner's severe impairments in combination. There is no doubt that the ALJ's decision could have given more thorough treatment to the issue. But the ALJ's finding that Petitioner "function[s] quite well," in a paragraph focusing on her obesity, indicates the ALJ did not find that Petitioner's obesity imposed on her any functional limitations. Moreover, the ALJ expressly stated Petitioner does not have a "combination of impairments" that medically equal the severity of a listing, and the decision cited an SSR which focused on obesity for the proposition that "adjudicators must

**MEMORANDUM DECISION AND ORDER – 15**

consider its effects when evaluating the claimant's limitations at all steps of the sequential evaluation." (AR 13, 14.) On balance, it appears the ALJ did consider Petitioner's impairments in combination. The decision is sparse and not a model for the description of the nature of the consideration of combined impairments that could have been set out. But, it is adequate, against all else and against Petitioner's arguments here.

## IV. CONCLUSION

Petitioner has not shown that she met or medically equaled the requirements for Listing 1.04A. Nor has she shown reversible error in the ALJ's evaluation of her impairments in combination. Accordingly, the ALJ's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: July 6, 2018

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge